Slip Op. No. 24-143

# UNITED STATES COURT OF INTERNATIONAL TRADE

SHANGHAI TAINAI BEARING CO., LTD. and C&U AMERICAS, LLC,

*Plaintiffs*,

*and*

ZHEJIANG JINGLI BEARING TECHNOLOGY CO., LTD.,

*Plaintiff-Intervenor*,

v.

UNITED STATES,

*Defendant*.

Before: Stephen Alexander Vaden, Judge

Court No. 1:23-cv-00020 (SAV)

## OPINION

[Sustaining the Department of Commerce's Final Results and Denying Plaintiffs' Motion for Judgment on the Agency Record.]

Dated: December 18, 2024

*David J. Craven*, Craven Trade Law LLC, of Chicago, IL, for Plaintiffs Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC.

*John J. Kenkel*, International Trade Law Counselors, PLLC, of Alexandria, VA, for Plaintiff-Intervenor Zhejiang Jingli Bearing Technology Co., Ltd.

*Geoffrey M. Long*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director, Commercial Litigation Branch; *L. Misha Preheim*, Assistant Director, Commercial Litigation Branch; *Jesus N. Saenz*,

and *Benjamin Juvelier,* Of Counsel, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement & Compliance.


**Vaden, Judge:** Plaintiffs Shanghai Tainai Bearing Co., Ltd. and C&U Americas, LLC (collectively Tainai) filed suit objecting to the Department of Commerce's (Commerce) resolution of the thirty-fourth administrative review of the antidumping order on tapered roller bearings from China. Joined by Plaintiff-Intervenor Zhejiang Jingli Bearing Technology Co., Ltd. (Jingli), Tainai brings multiple claims of error against Commerce's final determination. The Court finds these claims unavailing. Commerce's determination to apply a partial adverse inference based on Tainai's failure to cooperate to the best of its ability is supported by substantial evidence. Its determination to exclude from U.S. price additional revenue that Tainai invoiced as Section 301 duty payments is also supported by substantial evidence. Tainai's remaining claims raise similar legal issues to those advanced in its challenge to the thirty-third administrative review so that the Court's legal reasoning in *Shanghai Tainai Bearing Co. v. United States* (*Tainai I*), 47 CIT __, 658 F. Supp. 3d 1269 (2023), as applied to the facts of this case, leads the Court to reject them as well. The Motion for Judgment on the Agency Record is **DENIED**, and Commerce's Final Results are **SUSTAINED**.

**BACKGROUND**

Tainai is a Chinese manufacturer of tapered roller bearings.[1]  It purchases components used in manufacturing tapered roller bearings from a network of unaffiliated suppliers.  *See Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1284–85.  Tapered roller bearings are made from rollers, cages, cups, and cones.  Rollers are steel cylinders held together in a housing called a cage.  Caged rollers are inserted between two steel rings, allowing movement.  The inner ring is the cone, and the outer ring is the cup.  The antidumping order on tapered roller bearings from China (the Order) has been in place since June 15, 1987, and covers:

> [T]apered roller bearings and parts thereof, finished and unfinished, from China; flange, take up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use.

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China:  Final Results of Review; 2020-2021*, 88 Fed. Reg. 1,359, 1,360 (Dep't of Com. Jan. 10, 2023) (Final Results), and accompanying Issues and Decisions Mem. (IDM) at 2, J.A. at 1,004, ECF No. 42.  Tainai's Motion for Judgment on the Agency Record challenges the Final Results of the thirty-fourth administrative review of the Order, covering imports from China from June 1, 2020 through May 31,

---

[1] Shanghai Tainai Bearing Co., Ltd. brought its Motion together with another entity, C&U Americas, LLC.  Compl. ¶3, ECF No. 8.  In earlier proceedings before this Court, Tainai failed to explain the relationship between itself and C&U Americas.  *See Shanghai Tainai Bearing Co. v. United States*, 46 CIT __, 582 F. Supp. 3d 1299, 1308 (2022) (referring to the "recurring mystery" of the relationship between Shanghai Tainai Bearing Co. and C&U Americas and noting that Plaintiffs' counsel declined the Court's request to shed light on it).  The Court therefore refers generally to Plaintiffs as Tainai.

2021 (the Period of Review). *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 41,821, 41,825 (Dep't of Com. Aug. 3, 2021).

## I.   The Disputed Administrative Review

On August 3, 2021, Commerce initiated a review of the Order. *Id.* at 41,821. Commerce selected Tainai as a mandatory respondent. Issues and Decisions Mem. accompanying the Preliminary Results (PDM) at 2, J.A. at 4,154 n.4, ECF No. 42. Plaintiff-Intervenor Jingli was not selected for individual examination. Second Resp't Selection Mem. at 3, J.A. at 1,350, ECF No. 42. Commerce issued its initial questionnaire to Tainai. Initial Questionnaire, J.A. at 1,353, ECF No. 42. It asked Tainai to obtain factors of production information from its unaffiliated suppliers. *Id.* at 1,406–11. Tainai submitted its response, but Commerce later found that "it does not appear that Tainai made any attempt to request [factors of production] information from its unaffiliated suppliers in response to the initial questionnaire, nor did Tainai alert Commerce of any difficulties in obtaining accurate [factors of production] information." IDM at 8, J.A. at 1,010, ECF No. 42.

To calculate a proper dumping margin, Commerce needed complete factors of production information from Tainai. When dealing with nonmarket economies like China, Commerce does not typically accept the prices producers pay for inputs as representing fair market value. Instead, Commerce must determine the value of the subject merchandise "on the basis of the value of the factors of production utilized in producing the subject merchandise" and then add "an amount for general expenses and profit plus the cost of containers, coverings, and other expenses." 19 U.S.C. §

1677b(c)(1) (flush language). Commerce does this by using the costs for a producer of similar merchandise located in a market economy country of comparable development to the country being examined. 19 C.F.R. § 351.408(a)–(b) ("[Commerce] normally will calculate normal value by valuing the nonmarket economy producers' factors of production in a market economy country."). In other words, rather than accepting that the price the non-market economy manufacturer paid represents the fair value of the sum of (1) the cost of the product's components; (2) general expenses and profit; and (3) the cost of containers, coverings, and other expenses, Commerce constructs this amount itself by determining a value for each individual input. 19 U.S.C. § 1677b(c)(1) (flush language). "Commerce values certain factors of production, such as selling, general and administrative expenses, factory overhead, and profit, by using financial ratios derived from financial statements of producers of comparable merchandise in [a] surrogate country." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 618 F.3d 1316, 1319–20 (Fed. Cir. 2010) (citing *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1368 (Fed. Cir. 2010)). Ultimately, Commerce's task is to "attempt to construct a hypothetical market value" of the subject merchandise. *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1375 (Fed. Cir. 1999).

On March 29, 2022, Commerce issued Tainai a supplemental questionnaire and directed it to forward to its unaffiliated suppliers a letter and questionnaire requesting factors of production information. Letter Regarding Req. for Information, J.A. at 2,619, ECF No. 42. Commerce set the response deadline for April 12, 2022. *Id.* at 2,623. Tainai sought two extensions, explaining that it was impacted by a

COVID-19 outbreak in Shanghai, which limited its ability to comply with Commerce's requests. Suppl. Questionnaire Extension Req. (Apr. 4, 2022), J.A. at 2,693–94, ECF No. 42; Suppl. Questionnaire Extension Req. (Apr. 21, 2022), J.A. at 2,705–06, ECF No. 42. Commerce granted both extension requests and ultimately required the supplier responses no later than May 10, 2022. *See* Suppl. Questionnaire Extension Grant (Apr. 4, 2022), J.A. at 2,701, ECF No. 42; Suppl. Questionnaire Extension Grant, (Apr. 22, 2022), J.A. at 2,710, ECF No. 42.

On May 10, Tainai submitted its supplemental questionnaire responses. Tainai stated that it had forwarded Commerce's request for information to its suppliers, "but [Tainai had] been unable to obtain full responses." Suppl. Questionnaire Resp. at 2, J.A. at 2,911, ECF No. 42. Only one of Tainai's roller suppliers provided its production data to Tainai — thereby cooperating with Commerce's request. *Id.* Tainai also provided an example of a letter — dated May 5, 2022, five days before the deadline — that it sent to its unaffiliated suppliers. Letter of Assistance, J.A. at 84,732, ECF No. 43.

In its Preliminary Results, Commerce identified deficiencies in Tainai's reported factors of production information in both the initial and supplemental questionnaire responses. PDM at 13–15, J.A. at 4,165–67, ECF No. 42. Commerce concluded that Tainai "did not act to the best of its ability to comply with Commerce's requests for [factors of production] information and has demonstrated a pattern of not providing complete [factors of production] data." *Id.* at 15, J.A. at 4,167. Commerce also concluded that Tainai's unaffiliated suppliers "failed to cooperate by

not providing their [factors of production] data, either through Tainai or directly to Commerce." *Id.* Accordingly, Commerce found it appropriate to use partial facts available with an adverse inference with respect to cages supplied by uncooperative suppliers. *Id.* Where Tainai's unaffiliated, uncooperative suppliers provided all of the cages for certain control numbers[2] during the Period of Review, "[Commerce] valued the unreported cage [factors of production] using Tainai's highest [factors of production] consumption rates for cages for all other [control numbers] based on product description." *Id.*

Commerce also denied Tainai's request for a by-product offset because "Tainai was unable to provide either the quantity of scrap actually generated during the [Period of Review] pursuant to its own production process, or that of its suppliers…." *Id.* at 22. Commerce's "established practice" is to grant an offset to normal value for the sale of by-products generated during the production of subject merchandise *if* the respondent can demonstrate that the by-product is "either resold or has commercial value and re-enters the respondent's production process." *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1296 (quoting *Arch Chem., Inc. v. United States*, 33 CIT 954, 956 (2009)); *see also NTSF Seafoods Joint Stock Co. v. United States*, 44 CIT __, 487 F. Supp. 3d 1310, 1322 (2020) (explaining by-products eligible for an offset are those "generated

---

[2] "Control number," often referred to by the contraction "CONNUM," denotes a unique product based on relevant physical characteristics. To ensure that Commerce is comparing like products in the home and U.S. markets, it asks respondents to sort merchandise according to key differentiating categories with each number in the product's control number corresponding to physical characteristic groupings particular to the merchandise under review. *Xi'an Metals & Minerals Imp. & Exp. Co. v. United States*, 45 CIT __, 520 F. Supp. 3d 1314, 1321 n.4 (2021). As a simple shorthand, a reader may substitute "product" any time he reads "control number" or "CONNUM."

during the production process" of subject merchandise). The burden is on the respondent to provide Commerce with sufficient information to support a by-product offset claim. *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1296 (citing *Arch Chem.*, 33 CIT at 956). To qualify for a by-product offset, a firm must provide detailed documentation linking the amount of scrap sold or reused during the period of review with the amount of scrap generated from the production of subject merchandise during the period of review. *See Am. Tubular Prods., LLC v. United States*, 847 F.3d 1354, 1361–62 (Fed. Cir. 2017).

In the Final Results, Commerce continued to find that Tainai and its suppliers failed to act to the best of their abilities to provide complete responses. IDM at 6, J.A. at 1,008, ECF No. 42. Commerce also explained its treatment of two issues related to Section 301 duties, which are a type of duty imposed to combat unfair trade practices in foreign countries. 19 U.S.C. § 2411. First, Commerce determined that Section 301 duties are not "special duties" under *Wheatland Tube Co. v. United States*, 495 F.3d 1355 (Fed. Cir. 2007), and it accordingly reduced the U.S. price of subject merchandise by the amount of Section 301 duties paid pursuant to 19 U.S.C. § 1677a(c)(2)(A). IDM at 16–17, J.A. at 1,018–19, ECF No. 42. Second, when calculating U.S. price, Commerce excluded — or "capped" — additional revenue Tainai billed as "additional revenue for 301." *Id.* at 17. This additional revenue exceeded the amount of Section 301 duties Tainai owed. *Id.* at 17–19. Both actions had the effect of increasing Tainai's dumping margin. Third, Commerce continued to decline to grant Tainai a by-product offset. *Id.* at 20.

## II.  The Present Dispute

On February 21, 2023, Tainai filed its Complaint.  Compl., ECF No. 8.  The Court allowed Jingli to intervene as Plaintiff-Intervenor.  Order Granting Intervention, ECF No. 20.  In its Motion for Judgment on the Agency Record, Tainai argues that:  (1) Commerce should not have applied facts available with an adverse inference against Tainai; (2) Commerce improperly selected distortive factors of production as partial adverse facts; (3) Commerce should not have deducted Section 301 duties from the U.S. price; (4) Commerce should not have excluded from U.S. price additional revenue Tainai charged its customers for Section 301 duties; and (5) Commerce should have granted a by-product offset.  Pls.' Mem. in Supp. of Mot. for J. on Agency R. (Pls.' Br.) at 12, 26, 27, 29, 32, 37, ECF No. 30.[3]

On September 14, 2023, the Court issued an opinion in a separate case involving Tainai, addressing several of these issues as applied to the thirty-third administrative review of the Order.  *See Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1282–89, 1291–96 (discussing the application of facts available with an adverse inference to a cooperating respondent, the deduction of Section 301 duties, the exclusion of additional revenue from U.S. price, and whether Commerce should grant a by-product offset).  In *Tainai I*, the Court remanded two issues for further explanation: (1) Commerce's use of facts available with an adverse inference against a cooperating respondent based on the noncooperation of unaffiliated suppliers and (2) Commerce's

---

[3] Jingli filed a letter in lieu of a brief fully supporting Tainai's Motion.  Pl.-Int.'s Letter Br., ECF No. 32.

exclusion of additional revenue that Tainai invoiced as Section 301 duty payments.[4] *Id.* at 1296–97. The Court held that Commerce failed to address Tainai's argument that it lacked the requisite market power to compel its suppliers to cooperate with Commerce's investigation and failed to "carry out a case-specific analysis of the applicability of deterrence and similar policies." *Id.* at 1288 (quoting *Mueller Comercial De Mexico v. United States*, 753 F.3d 1227, 1234 (Fed. Cir. 2014)). The Court also ordered Commerce to further explain its decision to exclude the additional revenue from U.S. price. Specifically, Commerce was to explain how the additional revenue is related to profits on the sale of services — and not the sale of merchandise — and to consider "whether there is any basis to exclude such amounts from the 'price adjustments' described by [19 C.F.R.] § 351.401(c) and [19 C.F.R.] § 351.102(b)(38)." *Id.* at 1296.

The Defendant filed its Response in this case, Def.'s Resp., ECF No. 33, rejecting Tainai's arguments. The Government argued that (1) it lawfully applied partial facts available with an adverse inference based on Tainai and its unaffiliated suppliers' failure to cooperate; (2) it appropriately deducted Section 301 duties as part of its margin calculations; (3) it properly excluded from U.S. price additional revenue Tainai received in relation to Section 301 duties; and (4) it correctly denied Tainai a by-product offset. Def.'s Resp. at 7–8, ECF No. 33.

---

[4] The Court issued its opinion sustaining Commerce's remand redetermination for *Tainai I* concurrently with this opinion. *See Shanghai Tainai Bearing Co. v. United States*, 48 CIT __, Slip Op. 24-142 (Dec. 18, 2024).

The Government distinguished the situation here from *Tainai I*. It explained that, in this case, Commerce applied facts available with an adverse inference based on both Tainai *and* its suppliers' failure to cooperate. *Compare id.* at 11 ("Both Tainai and its unaffiliated suppliers failed to cooperate to the best of their ability.") (capitalization altered), *with id.* at 19 ("[U]nlike in *Tainai* [*I*], here, … Commerce based its decision on Tainai's failure to cooperate – not simply on its suppliers' failure."). 19 U.S.C. § 1677e(b)(1) provides for the application of facts available with an adverse inference when an "interested party" fails to cooperate to the best of its ability with a request for information. Commerce determined that Tainai and its unaffiliated suppliers are interested parties because they both are "producers of subject merchandise." Def.'s Resp. at 11, ECF No. 33 (citing IDM at 6, J.A. at 1,008, ECF No. 42); *see also* 19 U.S.C. § 1677(9)(A) (defining "interested party" as "a foreign … producer … of subject merchandise"). It justified its determination on three grounds: (1) Commerce used a partial adverse inference to remedy Tainai's noncooperation; (2) Tainai's resulting dumping margin in this case is more appropriate than the triple-digit margin Commerce assigned in *Tainai I*; and (3) Commerce based its partial adverse facts on Tainai's own data. Def.'s Resp. at 21–23, ECF No. 33.

In its reply brief, Tainai acknowledged that the Court had ruled against it in *Tainai I* with respect to the deduction of Section 301 duties from U.S. price and whether to grant a by-product offset. Pls.' Reply at 10, ECF No. 36. Thus, "absent a

reversal on appeal, plaintiffs have no further argument."[5]  *Id.*; *see also Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1291–94.   Tainai reiterated that Commerce's determinations to apply partial facts available with an adverse inference and to exclude the additional Section 301 duty revenue from U.S. price are not supported by substantial evidence.  Pls.' Reply at 2–10, ECF No. 36.

The Court held oral argument simultaneously for this case and the remand determination in *Tainai I*.  *See* ECF No. 47.  To clarify the record, the Court ordered supplemental briefing on (1) Commerce's treatment of the data provided by the sole cooperating unaffiliated supplier and (2) what the record shows is the earliest date Tainai notified its unaffiliated suppliers about Commerce's need for the factors of production information.  *See* ECF No. 46.  The Court also invited the parties to direct the Court to any invoices on the record that reflect one set price for the bearings with no separate line item for Section 301 duties.  *Id.*  In its supplemental letter, Commerce clarified that it used the cooperating supplier's information in its calculations.  Def.'s Suppl. Letter at 1–2, ECF No. 49.  It did not draw an adverse inference, as it had with the noncooperating suppliers.  *Id.* (citing Prelim. Calculation Mem. at 2, J.A. at 85,959, ECF No. 43).  In response to the Court's second question, Tainai submitted

---

[5] Tainai mistakenly stated that the capping issue "was provisionally resolved in favor of Tainai" in *Tainai I*, "and, absent a reversal on appeal, plaintiffs have no further argument." Pls.' Reply at 10, ECF No. 36.  In *Tainai I* the Court remanded the issue for further explanation but ultimately sustained Commerce's remand determination that continues to exclude Tainai's additional revenue. *Shanghai Tainai Bearing Co. v. United States*, 48 CIT __, Slip Op. 24-142 at 24–31 (Dec. 18, 2024). At oral argument for both cases, Tainai's counsel stated that the legal analysis for the capping issue is the same in this case as in *Tainai I*. Oral Arg. Tr. at 57:6–16, ECF No. 55. The Court will accordingly sustain Commerce's capping practice in this case as well.

copies of its extension requests, which "document the challenges facing [Tainai's] discussions with third country suppliers" because of COVID-19-related lockdowns in China. Pls.' Suppl. Letter at 1, ECF No. 48; *id.*, Ex. 1 at 3–4. Commerce notes "there is no record evidence to support Tainai's suggestion that it contacted its unaffiliated suppliers to solicit factors of production data prior to May 5, 2022." Def.'s Suppl. Letter at 3, ECF No 49. With the record now complete, the Court decides the parties' claims.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Plaintiffs' challenge to the Final Results under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting final determinations in antidumping reviews. The Court must sustain Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i). "[T]he question is not whether the Court would have reached the same decision on the same record[;] rather, it is whether the administrative record as a whole permits Commerce's conclusion." *New Am. Keg v. United States*, 45 CIT __, No. 20-00008, 2021 Ct. Intl. Trade LEXIS 34, at *15 (Mar. 23, 2021). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)).

Reviewing agency determinations, findings, or conclusions for substantial evidence, the Court assesses whether the agency action is reasonable given the "record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). The Federal Circuit has described "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## DISCUSSION

### I. Summary

This case involves a straightforward application of an adverse inference against a non-cooperating respondent. Tainai was aware of its unaffiliated suppliers' prior non-cooperation and was obligated to attempt to secure their cooperation through its best efforts. Instead, Tainai delayed reaching out to its suppliers until well after Commerce requested it do so. Tainai has not directed the Court to other evidence on the record to show earlier communications with its unaffiliated suppliers. Therefore, Commerce's decision to apply adverse inferences based on Tainai's noncooperation is supported by substantial evidence. The Court need not reach the question of whether Commerce could properly apply an adverse inference based on the unaffiliated suppliers' noncooperation.

Other aspects of Commerce's decision are also in line with the Department's legal obligations. Commerce correctly deducted Section 301 duties from U.S. price in accordance with the Federal Circuit's decision in *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 63 F.4th 25 (Fed. Cir. 2023), and this Court's opinion in *Tainai I*, 47 CIT __, 658 F. Supp. 3d 1269. The agency's decision to exclude from U.S. price additional revenue that Tainai earned by invoicing its customers for Section 301 duty payments is supported by substantial evidence. Finally, Commerce properly rejected Tainai's request for a by-product offset. For these reasons, Commerce's Final Results will be **SUSTAINED**.

## II. Application of Partial Facts Available with an Adverse Inference

### A.

The first issue is whether Commerce's decision to apply facts available with an adverse inference against Tainai is supported by substantial evidence. When foreign merchandise is sold in the United States at less than fair value, thereby injuring a domestic industry, Commerce may impose antidumping duties on the merchandise. 19 U.S.C. § 1673 (flush language). Antidumping duties equal the amount that the foreign market value, known as the "normal value," of the merchandise exceeds the U.S. price of the merchandise. *Id.* When Commerce is missing data needed to calculate the normal value of subject merchandise, the antidumping statute provides a two-part process to fill in the gap. 19 U.S.C. § 1677e(a). Under 19 U.S.C. § 1677e(a), Commerce may use "facts otherwise available" for missing information if:

(1) [N]ecessary information is not available on the record, or
(2) [A]n interested party or any other person —

(A) [W]ithholds information that has been requested by [Commerce]

(B) [F]ails to provide such information by the deadlines for submission of the information or in the form and manner requested, …

(C) [S]ignificantly impedes a proceeding …, or

(D) [P]rovides such information but the information cannot be verified ….

Those facts otherwise available may be chosen with an adverse inference if "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]…." 19 U.S.C. § 1677e(b)(1). Section 1677e(a) and 1677e(b) require two distinct analyses.[6] First, "Commerce … must determine that it is missing necessary information[.]" *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1282 (citing *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011)). Second, if Commerce wishes to fill this gap with "facts that reflect an adverse inference against an interested party," it "must … determine that the party has failed to cooperate by not acting to the best of its ability." *Id.* (citing *Zhejiang*, 652 F.3d at 1346). For these determinations, Tainai and its suppliers are considered "interested parties." *See* 19 U.S.C. § 1677(9)(A) (defining interested party to include any "foreign manufacturer, producer, or exporter … of subject merchandise").

In *Tainai I*, Commerce sought to apply facts available with an adverse inference against Tainai based on the noncooperation of its suppliers. *See Tainai I*,

---

[6] Sections 1677e(a) and 1677e(b) are often collapsed into "adverse facts available" or "AFA," but "the two statutory processes require distinct analyses rather than the single analysis implied by the term 'AFA.'" *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1282; *cf. Jiangsu Alcha Aluminum Co. v. United States*, 48 CIT __, 712 F. Supp. 3d 1376, 1389–91 (2024) (applying both analyses in a countervailing duty context).

47 CIT __, 658 F. Supp. 3d at 1282–89. But there Commerce had found that Tainai cooperated to the best of its ability. *Id.* at 1276. The Federal Circuit has elucidated additional requirements to apply an adverse inference against a cooperating party based on the noncooperation of third-parties. *See Mueller*, 753 F.3d at 1233 ("Commerce may rely on such policies as part of a margin determination for a cooperating party … as long as the application of those policies is reasonable on the particular facts and the predominant interest of accuracy is properly taken into account as well."). In other words, to draw an adverse inference against the cooperating Tainai based on its suppliers' noncooperation, Commerce needed to: (1) "make a case-specific determination that the respondent can influence its suppliers' decision to cooperate," and (2) "take into account the predominant interest in accuracy and explain any deterrence-based rationale that is used against the cooperating party." *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1281.

The situation here is different. *See Shenzhen Xinboda Indus. Co. v. United States*, 44 CIT __, 456 F. Supp. 3d 1272, 1285 n.22 (2020) (citing *e.g.*, *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289, 1299 (Fed. Cir. 2016)) ("[E]ach administrative review is a separate segment of an antidumping proceeding … with its own, unique administrative record[.]"). In this review, Commerce found that Tainai *and* its suppliers failed to cooperate to the best of their abilities. *Compare Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1276 ("Commerce did not find that [Tainai] … failed to cooperate to the best of its ability. Instead, it based its decision to apply an adverse inference on the lack of cooperation from [its] suppliers."), *with* IDM at 7,

J.A. at 1,009, ECF No. 42 ("Tainai failed to put forth its maximum efforts to investigate and obtain the requested [factors of production] information."), *and* IDM at 9–10, J.A. at 1,011–12 ("Tainai did not attempt to avoid non-cooperation by selecting other suppliers or by providing adequate time for its suppliers to respond to Commerce's requests for information."). Because Commerce's determination that Tainai did not cooperate to the best of its ability is supported by substantial evidence, the Court will sustain Commerce's use of facts available with an adverse inference.

In its Final Results, Commerce identified a gap in the record — factors of production information from Tainai's unaffiliated suppliers. IDM at 9, J.A. at 1,011, ECF No. 42. Commerce explained that it:

> requests [factors of production] to approximate the manufacturing process for producing subject merchandise and to determine the normal value … of the imported goods in question. Without this information, Commerce is unable to accurately approximate the manufacturing process of the respondent or its suppliers and must rely on a suitable alternative through the application of facts available or [adverse facts available].

*Id.* It is undisputed that all but one of Tainai's suppliers failed to provide the information Commerce requested. Thus, there was a gap requiring Commerce to resort to facts available in the record. 19 U.S.C. § 1677e(a); *see* Pls.' Reply at 4, ECF No. 36 ("[W]hile a gap [in the record] may exist, it should have been [filled] with facts available without adverse inferences.")

The next question is whether Tainai failed to cooperate to the best of its ability.[7] "Compliance with the 'best of its ability' standard is determined by assessing

---

[7] Tainai asserts that, because it was eligible for a separate rate from the China-wide rate, Commerce "necessarily found that Tainai was cooperative." Pls.' Br. at 20, ECF No. 30. This

whether [the] respondent has put forth its maximum effort to provide Commerce with full and complete answers ....” *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Commerce faults Tainai for not taking additional actions in response to its suppliers’ previous noncooperation and for failing to give its suppliers adequate time to respond to the questionnaires. IDM at 8–10, J.A. at 1,010–12, ECF No. 42. Tainai responds that it lacks the “market power” to compel its unaffiliated suppliers to cooperate. Pls.’ Br. at 20, ECF No. 30. But that argument is relevant to the question of whether Commerce can apply an adverse inference against a cooperating party based on the noncooperation of its unaffiliated suppliers. *See, e.g.*, *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1284–85. It does not excuse Tainai from its independent obligation to “put forth its maximum effort” to comply with Commerce’s investigation — especially given the preexisting history of noncooperation from its suppliers. *See id.* at 1276–77; *see also Nippon Steel*, 337 F.3d at 1382 (finding a party failed to cooperate to the best of its ability because it did not “do the maximum it [was] able to do”). Commerce discussed that history in its decision:

> [E]ven if Tainai does not control its suppliers, given its history as a respondent in this proceeding and its past inability to secure [factors of production] information from its suppliers of TRBs after the fact, or when the administrative review is underway, we believe that taking steps to preemptively avoid non-cooperation of producers is within the

is incorrect. As Commerce explained, Tainai was entitled to a separate rate based on “Tainai’s demonstration of the absence of *de jure* and *de facto* governmental control over its export activities.” Def.’s Resp. at 12, ECF No. 33 (citing PDM at 10, J.A. at 4,162, ECF No. 42); *see also Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1353 (Fed. Cir. 2015) (setting the same standard). Meanwhile, Commerce’s determination of the normal value of Tainai’s goods was based on “the value of the factors of production utilized in producing the subject merchandise” plus other related production expenses. 19 U.S.C. § 1677b(c)(1) (flush language). These are logically distinct inquiries. A company could comply with the former without having complied with the latter.

> realm of actions Tainai should have taken to demonstrate that it put forth its maximum effort to comply with its reporting responsibility. However, Tainai did not attempt to avoid non-cooperation by selecting other suppliers or by providing adequate time for its suppliers to respond to Commerce's requests for information.

IDM at 9, J.A. at 1,011, ECF No. 42; *see also* Pls.' Br. at 19, ECF No. 30 ("Tainai was aware of the potential consequences of failing to obtain this cooperation.").

Tainai knew the consequences of failing to cooperate, but the record shows it did not act accordingly. Commerce issued a supplemental questionnaire to Tainai for it to forward to its unaffiliated suppliers on March 29, 2022. Letter Regarding Req. for Information, J.A. at 2,619, ECF No. 42. It granted Tainai two extensions on that questionnaire. Suppl. Questionnaire Extension Grant (Apr. 4, 2022), J.A. at 2,701, ECF No. 42; Suppl. Questionnaire Extension Grant (Apr. 22, 2022), J.A. at 2,710, ECF No. 42. Commerce found that Tainai delayed sending Commerce's requests to its suppliers for more than a month. IDM at 8, J.A. at 1,010, ECF No. 42. When Tainai did transmit the request, its suppliers had only three business days to respond before the May 10 deadline. *Id.* ("Tainai failed to request the information from its unaffiliated suppliers until nine days after the second extension, thereby only providing three business days for its unaffiliated suppliers to complete the response before the extended response deadline."). This delay falls well short of Tainai's "put[ting] forth its maximum effort" to provide Commerce with full and complete answers. *Nippon Steel*, 337 F.3d at 1382.

Tainai claims that there are other communications with its suppliers that show May 5 was not the earliest date it transmitted the questionnaires to its suppliers.

But when asked to file supplemental briefing detailing when Tainai first contacted its suppliers to request the data, Tainai only directed the Court to its extension requests. *See generally* Pls.' Suppl. Letter, ECF No. 48 (citing Suppl. Questionnaire Extension Req. (Apr. 4, 2022), J.A. at 2,693, ECF No. 42 and Suppl. Questionnaire Extension Req. (Apr. 21, 2022), J.A. at 2,705, ECF No. 42). Those requests went to Commerce and do not include any prior communications with its suppliers. Thus, Commerce is correct that "there is no record evidence to support Tainai's suggestion that it contacted its unaffiliated suppliers … prior to May 5, 2022." Def.'s Suppl. Letter at 3, ECF No. 49; *see also id.* (noting that Tainai "requested an extension … and stated [in its supplemental questionnaire response] that it had 'forwarded this information … to its suppliers,'" yet "Tainai's letters to its unaffiliated suppliers are all dated May 5, 2022") (citing Letter of Assistance, J.A. at 2,920, ECF No. 42).

Moreover, "The burden of creating an adequate record lies with the interested parties, not with Commerce." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014). If Tainai made prior communications with its unaffiliated suppliers to induce, cajole, or otherwise encourage cooperation, it bore the burden of placing those communications on the record. *Cf. Nippon Steel Corp. v. United States*, 48 CIT __, Nos. 1:21-cv-00533, 1:22-cv-00183, 1:23-cv-00112 (SAV), 2024 Ct. Intl. Trade LEXIS 114, at *27–30 (Oct. 10, 2024) (remanding Commerce's determination to use facts available with an adverse inference when a respondent provided e-mail and call logs documenting its multiple attempts to secure cooperation from a reseller). Instead, the record supports Commerce's finding that Tainai delayed

sending Commerce's request for information until May 5, 2022. *See* IDM at 8, J.A. at 1,010, ECF No. 42. And where one of Tainai's suppliers did submit factors of production information, Commerce used that data instead of drawing an adverse inference. Prelim. Calculation Mem. at 2, J.A. at 85,959, ECF No. 43; *see also* Def.'s Suppl. Letter at 1–2, ECF No. 49. The Court will not entertain Tainai's unsupported argument that the cooperation of one supplier indicates that Tainai must have made earlier attempts to secure the cooperation of its other suppliers. The Court may only base its review on the record Tainai created. Because that record supports Commerce's determination that Tainai failed to act to the best of its ability, the Court will sustain Commerce's use of facts available with an adverse inference on that basis.

**B.**

Tainai separately argues that, even if Commerce properly drew an adverse inference, the facts Commerce used to do so produce an inaccurate result that yields an "unduly punitive" rate. Pls.' Reply at 9, ECF No. 36; *see also* Pls.' Br. at 28, ECF No. 30 ("This important goal [of] calculating the dumping margins as accurately as possibly was not met in the case."). According to Tainai, "the primary flaw with [Commerce's] selection of adverse facts, is that [it] selected data without considering the relative sizes of the components, finding articles of diverse sizes were comparable." Pls.' Reply at 9, ECF No. 36. In Tainai's account, Commerce "ignored all of the physical properties, dimensional measures[,] and [control number] factors in assigning substitute factors of production" and "defie[d] commercial reality." Pls.' Br. at 28–29, ECF No. 30.

Commerce needed to fill gaps in the record because some of Tainai's suppliers did not provide factors of production information. To fill these gaps, Commerce used Tainai's submitted factors of production data to determine the normal value for each control number of the cage components used to produce tapered roller bearings. IDM at 10–11, J.A. at 1,012–13, ECF No. 42. Commerce based its gap-filling calculations on the more general "product descriptions" that Tainai submitted as part of its factors of production data, ignoring other data Tainai submitted about the size, dimensions, and weight of individual components. *Id.*; Oral Arg. Tr. at 46:14–19, ECF No. 55 (THE COURT: "[Y]ou kind of looked at a little higher level of drawing your differences based on product groupings, as I recall, rather than individual product characteristics, which I took to mean the individual components of the control number." MR. LONG: "Right."). Product descriptions are "one of [the] four fields that Commerce use[s] to create" control numbers. *See Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1288 n.8. The three other, more specific fields are "outer diameter, inner diameter, and weight." *Id.* at 1277 n.6. Generally, all four fields help Commerce understand the components described by each control number, which in turn produces a more accurate calculation of each control number's normal value.

The Federal Circuit has clarified that there is no independent economic or commercial reality test. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016). "When Congress directs the agency to measure pricing behavior and otherwise execute its duties in a particular manner, Commerce need not examine the economic or commercial reality of the parties specifically, or of the

industry more generally, in some broader sense." *Id.* Commerce's determination "reflects 'commercial reality' if it is consistent with the method provided in the statute" and thus is "in accordance with the law." *Id.*

Commerce found Tainai did not cooperate, and that finding was supported by substantial evidence. Therefore, it was statutorily authorized to fill the gap created by the missing factors of production information by drawing an adverse inference. *See* 19 U.S.C. § 1677e(b)(1) (permitting facts otherwise available to be chosen with an adverse inference if "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]"). Unlike in *Tainai I*, where Tainai received an "eye-popping" margin of 538.79 percent, Commerce here assigned Tainai a margin of 36.03 percent — well below the margin in *Tainai I* or the China-wide margin of 92.84 percent from this administrative review. *Compare Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1286, *with* Final Results, 88 Fed. Reg. at 1,360, J.A. at 1,001, ECF No. 42. Commerce adequately explained its rationale for how it applied partially adverse facts:

> [W]e relied on the product description (*i.e.*, PRODUCTU) to determine the partial [adverse facts available] rate because using all of the product characteristics would have amounted to an application of neutral facts available … [B]ecause Tainai and its unaffiliated suppliers failed to act to the best of their abilities to provide the missing [factors of production] information, we find that the application of neutral facts available is not appropriate. Therefore, we relied on the product description to apply partial [adverse facts available] to the missing cage [factors of production] because it is accurate to group each of the products by their description and functions to induce cooperation while limiting the breadth of the application of [adverse facts available].

IDM at 10–11, J.A. at 1,012–13, ECF No. 42; *see also* Def.'s Resp. at 23, ECF No. 33 (stating that Commerce's approach "served to avoid rewarding the noncooperation of both Tainai and its suppliers").

Commerce explained that it sought to balance accuracy with an incentive for future cooperation. IDM at 11, J.A. at 1,013, ECF No. 42. In doing so, it used Tainai's own data. *Id.* at 10, J.A. at 1,012 ("Indeed, the cage [factors of production] data we are using as partial [adverse facts available] are Tainai's own extrapolation that we relied on in the *Preliminary Results*."); *see also* Pls.' Reply at 9, ECF No. 36 ("While it is true that the data in question is that of Tainai, such data is for a range of bearings of a specific size and weight."). Although Tainai wishes Commerce would draw a more "favorable" adverse inference, Commerce explained that doing so would amount to applying neutral facts available and not provide a sufficient incentive for Tainai to cooperate in future reviews. IDM at 10, J.A. at 1,012, ECF No. 42; *see also F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (describing "an adverse facts available rate" as "a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance"); *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1286 ("Commerce must appropriately balance the competing goals of accuracy and deterrence when it selects facts otherwise available with an adverse inference."). Commerce's decision reasonably balances the statutory factors required to draw an adverse inference. Because Commerce's application of partial adverse facts available

is consistent with the statute and supported by substantial evidence, the Court will sustain its determination.[8]

### III. Section 301 Duties

### A. Deduction of Section 301 Duties from U.S. Price

When calculating Tainai's dumping margin, Commerce deducted Section 301 duty payments from the U.S. price of the subject merchandise. IDM at 17, J.A. at 1,019, ECF No. 42; *see also* 19 U.S.C. § 1677a(c)(2) ("[U.S. price shall] be reduced by the amount, if any, included in such price, attributable to any … United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States[.]"). This deduction "helps ensure an 'apples [to] apples' comparison between the merchandise sold in the home market and the U.S. market by deducting costs associated with transporting merchandise to the United States." *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1291.

In determining whether a specific duty is intended to qualify as a "United States import duty," the Federal Circuit requires this Court to use a "proclamation-specific approach" that focuses "on the character" of the "authorized governmental action that actually prescribed the duty on imports at issue." *Borusan*, 63 F.4th at

---

[8] Tainai also challenged Commerce's decision to value certain inputs with surrogate values for finished components. *See* Pls.' Br. at 26–27, ECF No. 30. In the remand opinion for *Tainai I*, the Court sustained Commerce's use of surrogate values for completed components as supported by substantial evidence based on Tainai and its suppliers' operation in a nonmarket economy. *Shanghai Tainai Bearing Co. v. United States*, 48 CIT __, Slip Op. 24-142 at 23–24 (Dec. 18, 2024). Tainai cites no additional authority for why Commerce's practice is improper here.

33–34. In *Tainai I*, the Court examined *Borusan*'s analysis of Proclamation 9705, which enacted the Section 232 duties at issue in the Federal Circuit case, and compared the language in that proclamation to the proclamation that enacted the Section 301 duties here. *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1291–94. *Compare Borusan*, 63 F.4th at 34 ("This rate of duty, which is in addition to any other duties, fees, exactions, and charges ….") (emphasis omitted), *with Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1293 (applying the rate of the Section 301 duty "in addition to all other applicable duties, fees, exactions, and charges") (emphasis omitted). The Court concluded that "'the particular exercise of the authority' to enact the Section 301 duties at issue intended for these duties to be additional to antidumping duties." *Tainai I*, 47 CIT __, 658 F. Supp. at 1294. Therefore, it sustained Commerce's determination to deduct Section 301 duties from U.S. price. *Id.*; *see also Jinko Solar Imp. and Exp. Co. v. United States*, 48 CIT __, 701 F. Supp. 3d 1367, 1391 (CIT 2024) (applying the reasoning in *Tainai I* to sustain Commerce's deduction of Section 301 duties). Tainai acknowledges "[t]his issue was provisionally resolved against Tainai … and absent a reversal on appeal, plaintiffs have no further argument." Pls.' Reply at 10, ECF No. 36. For the same reasons stated in *Tainai I*, the Court sustains Commerce's decision to deduct the Section 301 duties from U.S. price here.

### B. Capping of Amounts Denominated as "Additional Revenue for 301"

As it had in the previous administrative review, Commerce also excluded, or "capped," from U.S. price any other revenue Tainai received in connection with

Section 301 duties.[9]  According to Tainai, "for certain sales[,] an additional amount was reported as additional compensation intended to off-set the additional expense, including the duty, incurred for the [Section] 301 duties."  Pls.' Br. at 32, ECF No. 30. In other words, for some of its U.S. sales, Tainai charged its customers for the applicable Section 301 duties *plus* an amount of "additional compensation" for Tainai related to those Section 301 duties.  *Id.*  Commerce refused to include this additional compensation in Tainai's U.S. price, which increased Tainai's dumping margin.  At oral argument, Tainai's counsel stated that the legal analysis of this issue is the same for this case as *Tainai I.*  Oral Arg. Tr. at 57:6–16, ECF No. 55 (THE COURT:  "It's my understanding … that essentially for the remand case and the new case, different transactions but the basic legal analysis is the same for both?"  MR. CRAVEN: "Yes, Your Honor … there's no … distinction.  It's the same company.  It's the same pricing practices.").  Accordingly, the Court applies its analysis in *Tainai I* and the remand opinion for that case to hold that Commerce's determination to exclude Tainai's excess revenue from U.S. price is supported by substantial evidence.  *See Shanghai*

---

[9] At oral argument, the parties discussed whether the issue should be characterized as Commerce *reducing* Tainai's U.S. price by the additional revenue amount or *refusing to add* it to the U.S. sales price.  *Compare* Oral Arg. Tr. at 59:13–15, ECF No. 55 (MR. CRAVEN: "The problem [is] that the additional [revenue is] being deducted from our price on the basis that those monies were not related to the sale."), *with id.* at 61:5–11, 61:23–24 (THE COURT: "[F]rom [Commerce's] perspective[,] [Commerce] wouldn't be deducting anything from U.S. price because [Tainai] took in that extra revenue.  But [Commerce] also wouldn't be adding anything to [Tainai's] U.S. price because [it] wouldn't be agreeing with you that the [additional revenue] was a profit on the merchandise as opposed to a profit on the duty." … MR. LONG:  "I understand Your Honor's articulation of the practice to be correct[.]"). Government counsel noted, "[W]e sometimes flip our conversation between sides [of the] ledger.  But ultimately, … if there's profit from 301 duties, that is not being built into an increase in U.S. price."  *Id.* at 62:24–63:4.  For the sake of consistency, the Court will refer to Commerce's practice as refusing to include the additional revenue in the U.S. sales price.

*Tainai Bearing Co. v. United States*, 48 CIT __, Slip Op. 24-142 at 24–31 (Dec. 18, 2024) (holding that Commerce properly excluded the additional Section 301-related revenue that Tainai charged some of its customers from U.S. price).

When determining whether subject merchandise is being sold at less than fair value, Commerce must make a "fair comparison" between a good's export price or constructed export price and its normal value. *See* 19 U.S.C. § 1677b(a). Export price and constructed export price reflect the price of the good when it is sold "in the United States." 19 U.S.C. § 1677a(a)–(b). To determine this U.S. price, Commerce must reduce the price that U.S. customers paid for the subject merchandise by "the amount, if any, included in such price, attributable to any additional costs, charges, or expenses, and United States import duties, which are incident to bringing the subject merchandise from the original place of shipment in the exporting country to the place of delivery in the United States[.]" 19 U.S.C. § 1677a(c)(2)(A). These adjustments "help[] ensure an 'apples [to] apples' comparison between merchandise sold in the home market and the U.S. market by deducting costs associated with transporting merchandise to the United States." *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1291 (quoting *Smith-Corona Grp. v. United States*, 713 F.2d 1568, 1578 (Fed. Cir. 1983)).

Like in the prior administrative review, Commerce analyzed Tainai's billing practices to make these statutorily mandated adjustments. IDM at 17–19, J.A. at 1,019–21, ECF No. 42. Tainai explained to Commerce that it used one of three kinds of invoices to charge its U.S. clients. Tainai's Resp. to Suppl. Section A, C, and D, Questionnaire (May 3, 2022), J.A. at 82,056–57, ECF No. 43. First, for some U.S.

customers, Tainai charged a "gross unit price" that included both the price of the subject merchandise and a "[t]ariff charge." *Id.* at 82,057.  Second, for other U.S. customers, Tainai charged a "gross unit price" that only included the price of the subject merchandise and then – on the same invoice – included a "separate line item only for the tariff charge." *Id.*  Third, for yet other U.S. customers, Tainai provided one invoice for the cost of the subject merchandise and another "separate monthly invoice only for the tariff charge." *Id.* at 82,056.

When Tainai's invoices separated out the tariff charge from the "unit price," Tainai "bifurcated" the price it charged its customers "into a unit price [for the subject merchandise] and *an additional charge representing additional revenue to offset the added cost of the seller resulting from the imposition of the Section 301 duties*."  Pls.' Br. at 32, ECF No. 30 (emphasis added).  This additional Section 301-related charge exceeded the actual amount of Section 301 duties paid when importing the subject merchandise.  *See* IDM at 18, J.A. at 1,020, ECF No. 42 (noting these tariff charges included "excess [S]ection 301 duty revenue").  The parties disputed whether this additional revenue should be excluded from or included in the U.S. price.  *Id.* at 17, J.A. at 1,019.

As before, Commerce decided that this additional revenue should not be included in U.S. price when Tainai bifurcated its invoices.  It explained this additional revenue should not be included because "these additional revenues directly relate to U.S. import duties (*i.e.*, [S]ection 301 duties) and not the [tapered roller bearings] themselves."  IDM at 19, J.A. at 1,021, ECF No. 42; *see also* 19 U.S.C. § 1677a(c)(2)(A)

(requiring Commerce to make deductions to U.S. price for certain expenses). Commerce believes that excluding the additional revenue is analogous to its practice of excluding other services an exporter might provide and charge to its U.S. customer, such as arranging freight. Def.'s Resp. at 34, ECF No. 33 (citing IDM at 18–19, J.A. at 1,020–21, ECF No. 42); *Shanghai Tainai Bearing Co. v. United States*, 48 CIT __, Slip Op. 24-142 at 29 (Dec. 18, 2024). At oral argument, the Government characterized the "service" as being akin to a handling fee for collecting Section 301 duties. Oral Arg. Tr. at 62:19–23, ECF No. 55 (THE COURT: "According to you, [the additional revenue is] attributable to a service or perhaps better categorized as the frustration and expense of serving as a tax collection agent for the federal Government." MR. LONG: "Yes, Your Honor.").

Tainai has given the Court no reason to question its prior analysis. Tainai's own characterization of its business practice reinforces the Court's understanding that the additional revenue is attributable to Tainai's Section 301 duty obligations and not a change in the sale price for subject merchandise. Tainai explained, "[F]or certain sales[,] an additional amount was reported as additional compensation *intended to off-set the additional expense, including the duty incurred for the 301 duties.* It was not a pass-through, it was a fixed amount." Pls.' Br. at 32, ECF No. 30 (emphasis added). This characterization bolsters Commerce's determination that this kind of additional revenue is not attributable to an increase in price for the good itself. *Compare id.*, *with* Oral Arg. Tr. at 62:19–23, ECF No. 55. Consistent with the analysis of the remand results in *Tainai I*, the Court sustains Commerce's decision

to exclude the additional revenue Tainai received in connection with its Section 301 duties.

## IV. By-Product Offset

Commerce's "established practice is to 'grant an offset to normal value, for sales of by-products generated during the production of subject merchandise, if the respondent can demonstrate that the by-product is either resold or has commercial value and re-enters the respondent's production process.'" *Tainai I*, 47 CIT __, 658 F. Supp. 3d at 1296 (quoting *Arch Chem.*, 33 CIT at 956). Tainai bears the burden to provide Commerce with sufficient information to support a by-product offset claim. *Id.* A respondent will not carry its burden if "it fails to 'document the quantity of scrap produced during the [Period of Review]' and merely 'equate[s] total scrap sold during the [Period of Review] with total scrap produced during the [Period of Review].'" *Id.* (quoting *Am. Tubular Prods.*, 847 F.3d at 1361). Tainai concedes that "the quantity of scrap produced is not directly recorded[,]" but it argues "the quantity of scrap produced is the same as the quantity of scrap sold …." Pls.' Br. at 37, ECF No. 30. As in *Tainai I*, the Court continues to follow Federal Circuit precedent and finds that Tainai's argument is insufficient as a matter of law. Commerce's decision to deny Tainai a by-product offset is **SUSTAINED**.

## CONCLUSION

Every case turns on its own record. Tainai had an independent obligation to cooperate to the best of its ability with Commerce's request for information. The evidence shows that it did not do so in this case. Commerce appropriately applied

facts available with an adverse inference against Tainai based on its failure to cooperate to the best of its ability. The agency's decision to exclude from U.S. price the additional revenue Tainai charged for its Section 301 duties is also supported by substantial evidence. Tainai's remaining claims fail under this Court's reasoning in *Tainai I*. Therefore, Tainai's Motion for Judgment on the Agency Record is **DENIED** and Commerce's Final Results are **SUSTAINED**.

Stephen Alexander Vaden, Judge

Dated: December 18, 2024
        New York, New York